UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 20-168-DLB-EBA

KRAUSS-MAFFEI CORPORATION                                                      PLAINTIFF

v.

ABC TECHNOLOGIES, INC.                                                          DEFENDANT

MEMORANDUM OPINION AND ORDER

ABC TECHNOLOGIES, INC.                                                    THIRD-PARTY PLAINTIFF

v.

CUTTING EDGE PRECISION SERVICES, et al.       THIRD-PARTY DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

I.     INTRODUCTION

This matter comes before the Court on Third-Party Defendants Proper Group International and Cutting Edge Precision Services' Joint Motion to Dismiss (Doc. # 23) Third-Party Plaintiff ABC Technologies Inc.'s Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6), or in the Alternative, the Doctrine of *Forum Non Conveniens*. The Motion has been fully briefed (Docs. # 24, 30 and 32) and is now ripe for review. For the reasons below, Third-Party Defendants' Motion to Dismiss is **granted**.

II.    FACTUAL AND PROCEDURAL BACKGROUND

ABC Technologies, Inc. ("ABC"), a Canadian company based out of Ontario, was

1

the original defendant in this suit, initiated by the original plaintiff, Krauss-Maffei Corporation ("KMC"). (Docs. # 1 and 12 ¶ 1). KMC alleged that ABC breached their contract when it ordered machinery from KMC for injection molds to manufacture plastic products and then failed to pay. (Doc. # 1 ¶¶ 2-6, 23-27). In response, ABC alleged several counterclaims against KMC.[1] (Doc. # 12 ¶¶ 1-56). ABC and KMC eventually settled their claims but not before ABC, under Federal Rule of Civil Procedure 14 ("Rule 14"), impleaded both Proper Group International ("Proper") and Cutting Edge Precision Services ("CEPS") as Third-Party Defendants. (*Id.* ¶¶ 3-4); (Doc. # 39). Proper is a Michigan corporation while CEPS, like ABC, is an Ontario company.[2] (Doc. # 12 ¶¶ 3-4).

ABC alleges that KMC recommended Proper's services to help create the injection molds needed for its project. (*Id.* ¶ 21). Subsequently, ABC executed a Purchase Order ("PO") with both KMC and CEPS for the molds.[3] (*Id.* ¶ 24). This dispute revolves around the "Governing Law" section of ABC's PO with CEPS that reads in relevant part: "The Purchase Order . . . shall be governed by and construed in accordance with the laws of Ontario and the laws of Canada," and "[a]ny legal proceeding related in any way to the Purchase Order shall be commenced in a court in Ontario." (Doc. # 24-1 ¶ 37).

ABC further alleges that KMC, Proper, and CEPS failed to timely provide the injection molds after representing they would do so before ABC's August 13, 2020

---

[1] When the Court references paragraphs from ABC's Answer, Affirmative Defenses, Counterclaims, and Third-Party Complaint (Doc. # 12), it is referencing paragraphs under the title "Counterclaims Against Krauss-Maffei Corporation and Third-Party Complaint Against Proper International Group, Inc. And Cutting Edge Precision Service[s]," beginning on page 9 of the document.

[2] ABC alleges that Cutting Edge Services is a division of Proper Group International.

[3] While ABC alleges it executed a PO with Proper, the PO attached to its Third-Party Complaint only lists Cutting Edge Precision Services as the supplier. (Doc. # 12-2).

deadline. (Doc. # 12 ¶¶ 26-31). As a result, ABC allegedly had to cancel its order and expend substantial sums of money to revert to an older technology approved for their project. (*Id.* ¶¶ 32-33). ABC settled its claims against KMC but also brought third-party claims against Proper and CEPS for promissory estoppel, breach of contract, breach of the implied covenant of good faith and fair dealing, and for declaratory judgment. (*Id.* ¶¶ 35-40, 57-72); (Doc. # 39).

Based on the forum-selection clause in ABC's PO, Third-Party Defendants filed a Joint Motion to Dismiss ABC's Third-Party Complaint. (Docs. # 24 and 25). Third- Party Defendants argue that ABC's claims should be adjudicated in Ontario courts while ABC insists that this Court is a proper forum. (*See generally* Docs. # 25, 30, and 32).

### III. ANALYSIS

#### A. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Sixth Circuit has recognized that a Rule 12(b)(6) motion is a proper procedural vehicle to enforce a forum-selection clause. *See Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 933-34 (upholding dismissal of an action under Rule 12(b)(6) based on a valid forum-selection clause); *Kelly v. Liberty Life Assurance Co. of Bos.*, No. 17-139-DLB, 2018 WL 558643, at *4 (E.D. Ky. Jan. 25, 2018) ("Without committing to a hard-and-fast rule, the Sixth Circuit's more recent case *Smith v. Aegon* confirms that dismissal under Rule 12(b)(6) is a permitted mechanism when a court is presented with an action brought in contradiction to the litigating parties' forum-selection agreement."); *Scepter, Inc. v.*

*Nolan Transportation Grp., LLC*, 352 F. Supp. 3d 825, 830 (M.D. Tenn. 2018) (noting that when "a case is improperly filed in contravention of a forum selection clause, the Court has the discretion to . . . dismiss the action pursuant to [Rule 12(b)(6)].").

Where a motion under Rule 12(b)(6) asks the court to consider "matters outside the pleadings," the motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, because under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," documents attached to a Rule 12(b)(6) motion that are "referred to in the complaint" and "central to the plaintiff's complaint" may be properly considered under the Rule 12(b)(6) standard of review. *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (abrogated on other grounds) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

### B. The Forum-Selection Clause is Valid and Enforceable

Generally, courts uphold forum-selection clauses absent a strong showing that they should be set aside. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Courts consider whether the forum-selection clause is valid, enforceable, and mandatory. *See id.*; *Kelly*, 2018 WL 558643, at *2; *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) ("Because the clause states that 'all' disputes 'shall' be at Siempelkamp's principal place of business, it selects German court jurisdiction exclusively and is mandatory."). If a forum-selection clause is both valid and enforceable, the burden shifts to the plaintiff to show that the provision should not be enforced. *Wong*, 589 F.3d at 828; *Kelly*, 2018 WL 558643, at *2.

4

Notably, the parties do not dispute that the forum-selection clause included in the PO is valid or enforceable. (Doc. # 24 at 9-10); (Doc. # 30 at 3-4, 7). While Third-Party Defendants argue that the forum-selection clause is valid and enforceable, ABC ignores those arguments in its Response. (Doc. # 24 at 9-13). Instead, the parties dispute whether the forum-selection clause was triggered by ABC's Third-Party Complaint, which ABC argues is outside of the scope of the forum-selection clause. (Docs. # 30 at 7 and 32 at 7-10). Therefore, based on the parties' implicit agreement, the forum-selection clause is presumptively valid and enforceable.[4]

### C. The Forum-Selection Clause Applies to ABC's Third-Party Complaint

ABC argues that (1) its Third-Party Complaint does not constitute commencement of an action under the terms of the forum-selection clause and (2) in the alternative, that third-party complaints are generally exempt from forum-selection clauses. (Doc. # 30 at 3-4).

First, ABC argues that because the PO's forum-selection clause mandates that "any legal proceeding related in any way to the [PO] shall be commenced in a court in Ontario," ABC's use of Rule 14 to assert claims against Proper and CEPS as a third-party plaintiff is outside of the scope of the clause. (Docs. # 24-1 ¶ 37 and 30 at 8). ABC reasons that because the original complaint by KMC commenced the action, not its Third-Party Complaint, the forum-selection clause was not triggered. (Doc. # 30 at 8).

While creative, this argument fails to persuade the Court that the forum-selection clause at issue does not apply to ABC's Third-Party Complaint. In fact, courts do consider

---

[4] Even if enforceability of the forum-selection clause was in dispute, ABC has made no arguments regarding enforceability, so it has failed to meet its burden of showing that the forum-selection clause should not be enforced. *Wong*, 589 F.3d at 828.

5

third-party complaints as commencement of an action. *Ladd Furniture, Inc. v. Ernst & Young*, No. 2:95CV00403, 1998 WL 1093901, at *6 (M.D.N.C. Aug. 27, 1998) ("The Court finds that [third-party plaintiff] 'commenced' its civil action against [third-party defendant] on January 31, 1997, which was when [third-party plaintiff's] Third-Party Complaint was filed with the Court.") (cleaned up); *Int'l Tools (1973), Ltd. v. Arctic Enters., Inc.*, 75 F.R.D. 70, 74 (E.D. Mich. 1977) (holding that "claims were commenced" when third-party plaintiffs filed motions to amend their pleadings and provided the third-party defendants with notice of the motions).

Moreover, ABC ignores the term "legal proceeding" in the PO's clause, which includes various acts, not just the filing of a complaint. *Proceeding*, Black's Law Dictionary (11th ed. 2019) ("[Proceeding] may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment."); *Piazza Fam. Tr. II v. Ciarrocchi*, No. 17-1704, 2017 WL 5146007, at *3-4 (E.D. Pa. Nov. 6, 2017) (finding that a forum selection clause that applied to "any proceeding between the parties" included third-party claims); *see Premiere Radio Networks, Inc. v. Hillshire Brands Co.*, No. CV 12-10199 CAS (PJWx), 2013 WL 5944051, at *2-4 (C.D. Cal. Nov. 4, 2013) (granting motion to dismiss third-party complaint based on forum-selection clause that encompassed "any legal action, suit, or proceeding brought.").

Second, ABC argues that "third-party claims [are] not subject to dismissal merely because the venue in which [they are] asserted does not match the forum in the selection clause." (Doc. # 30 at 12). In essence, ABC relies on one case, that it regards as the seminal case on the issue, to assert that third-party claims are immune from the reach of

6

forum-selection clauses. (Doc. # 30 at 12-14) (citing *Am. Licorice Co. v. Total Sweeteners, Inc.*, No. C-13-1929 EMC, 2014 WL 892409, at *1 (N.D. Cal. Mar. 4, 2014)). Specifically, ABC depends on the *American Licorice* court's analysis of the tension between Rule 14 and forum-selection clauses. 2014 WL 892409, at * 6. However, the *American Licorice* court noted that "[t]he parties do not cite, nor could the Court find, legal authority that decides the priority between a forum selection clause and a Rule 14 impleader claim." *Id.* The court went on to explain that because there were two related actions pending before the court, it would be "antithetical to the policy of judicial efficiency underlying Rule 14" to transfer the case from the Northern District of California to New York. *Id.* In this matter, there is no additional nor underlying action before this Court since the original parties settled their claims. (Doc. # 39). Therefore, the same judicial efficiency concerns are not present here, especially because the alternative forum is foreign.

Even worse, several courts, including in its own district, have disagreed with the *American Licorice* court's reasoning and do in fact dismiss third-party complaints based on forum-selection clauses. *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126, at *5-6 (N.D. Cal. Aug. 12, 2016) ("Other cases, however, including cases in this district, have applied forum-selection clauses to dismiss third-party complaints . . . [t]his court's best judgment is that forum-selection clauses do apply to Rule 14 third-party claims."); *United Fire & Cas. Co. v. Weber, Inc.*, 434 F. Supp. 3d 729, 733-34 (D. Minn. 2020) ("The Court finds that a valid forum selection clause takes priority over Rule 14 impleader . . . the Court notes that the vast majority of courts that have addressed this issue have similarly found that a valid forum-selection

7

clause must trump the policy considerations of Rule 14.") (citations omitted); *Pinkus v. Sirius XM Radio Inc.*, 255 F. Supp. 3d 747, 750-51 (N.D. Ill. 2017) ("DialAmerica cites several decisions that reach the opposite result [of *American Licorice*] and enforce forum selection clauses invoked by third-party defendants against third-party plaintiffs . . . a forum selection clause is enforceable even when invoked by a third-party defendant against a third-party plaintiff.") (citations omitted).

This Court adds its name to the long list of courts that disagree with the reasoning of *American Licorice*, and agrees that "'considerations of judicial economy alone do not permit this Court to ignore a 'presumptively valid' forum selection clause.'" *Glob. Quality Foods*, 2016 WL 4259126, at *5 (quoting *Premiere Radio*, 2013 WL 5944051, at *3). Regardless, as noted above, those same concerns of judicial efficiency are not present in this case since the original parties have settled their claims.

Accordingly, the forum-selection clause between ABC and Third-Party Defendants does encompass ABC's Third-Party Complaint.

D.  ***Forum Non Conveniens* Analysis**

Valid forum-selection clauses represent the parties' agreement to litigate in a particular forum, and "when parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations . . . the interest of justice is served by holding parties to their bargain." *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013) (internal quotations omitted). Again, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64.

8

The Supreme Court has established that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 60. Even though the Court in *Atlantic Marine* considered transfer of venue under 28 U.S.C. § 1404(a), the Court made clear that "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.*; *Wong*, 589 F.3d at 832 (noting that the analysis of a § 1404(a) motion to transfer "applies equally in the forum non conveniens context."). Further, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co.*, 571 U.S. at 63 (alteration in original).

Generally, courts consider both "the convenience of the parties and various public-interest considerations."[5] *Id.* at 62. The presence of a valid forum-selection clause however modifies this Court's analysis in three important ways: (1) it should not consider arguments about the parties' private interests nor (2) the plaintiff's choice of forum and (3) if the venue is changed, then the new forum's law is applied. *Id.* at 63-64. Consequently, this Court need only consider the relevant public interest factors including "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of

---

[5] While it is unclear if this applies in the context of a forum-selection clause, courts also consider if an adequate alternative forum has been identified. *Wong*, 589 F.3d at 830-31. However, this step is irrelevant in the instant matter because neither party disputes the adequacy of Canadian courts. *AEP Indus., Inc. v. UTECO N. Am., Inc.*, No. 1:14-CV-96-GNS, 2015 WL 1298556, at *2 (W.D. Ky. Mar. 23, 2015).

9

unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981) (internal quotation marks omitted); *Wong*, 589 F.3d at 832.

The first factor is likely neutral as this Court is unaware—and the parties offer no evidence—of the relative congestion of Ontario courts. *Ingram Micro, Inc. v. Airoute Cargo Express, Inc.*, No. 99-cv-12480-SAS-FM, 2001 WL 282696, at *5 (S.D.N.Y. Mar. 22, 2001) (finding this factor is neutral when the parties have not offered evidence of the congestion of Ontario courts); Michael Karayanni, *Forum Non Conveniens In The Modern Age: A Comparative and Methodological Analysis of Anglo-American Law*, 80 (2004) ("Moreover, even when taken as a factor, this worry about court congestion has decreasing significance, since court congestion is becoming a universal phenomenon."). ABC's arguments to the contrary rely on the fact that the underlying action between ABC and KMC was still pending before the Court, which is no longer the case. (Docs. # 30 at 15 and 39).

The second factor—the local interest in having localized controversies decided at home—urges this Court to dismiss this action. ABC argues that this Court has an interest in this matter because the manufacture of the molds was to take place in Michigan.[6] (Doc. # 30 at 16). Nevertheless, that is not a substantial reason why this court, sitting in Kentucky, should hear the matter. If anything, Canadian courts have more of an interest in the dispute because it involves two companies based in Ontario and one based in Michigan. (Doc. # 12 ¶¶ 1, 3, 4). Furthermore, the PO this dispute revolves around was

---

[6] ABC makes additional arguments that relate to KMC, who is no longer a party to this action.

10

executed by the two Canadian companies, requested delivery of the equipment to an address in Ontario, and mandates that Canadian law shall be applied to any legal proceeding. (Doc. # 12-2); (Doc. # 24-1 ¶ 37).

For that same reason, the third and fourth factors cut in favor of dismissal. Ontario has an interest in this case, especially where the law that will govern, per the terms of the PO, is Canadian law. (Doc. # 24-1 ¶ 37). ABC argues that this factor is irrelevant because federal judges routinely apply the law of other states, and this Court can apply Ontario law. (Doc. # 30 at 17-18). However, this does not rebut Ontario's interest in the trial of this suit, where the court is at home with the law, nor explain how this would avoid unnecessary problems in the application of foreign law. While federal courts are routinely tasked with applying the law of other states or countries, different countries have their own legal systems for a reason: to resolve disputes among its citizens, like the two contracting parties in this third party dispute.

Lastly, the final factor — the unfairness of burdening citizens in an unrelated forum with jury duty — also urges this Court to dismiss this action. ABC argues that since KMC and ABC's claims would have been heard in this Court anyway, that ABC's third-party claims should also be heard in this forum. (Doc. # 30 at 18). Now that KMC and ABC have settled their claims, there is hardly any connection between Kentucky and ABC's claims against Proper and CEPS. (Doc. # 39). It would epitomize unfairness to burden the citizens of the Eastern District of Kentucky with jury duty to decide a dispute revolving around a PO executed by two Canadian companies, especially when the closest connection to Kentucky is the production of products in Michigan, an entirely different state.

11

Thus, ABC has failed to meet its burden of why this Court should not hold the parties to its agreement and dismiss this matter so that it can be brought in the agreed upon forum: Ontario. *Atl. Marine Constr. Co.*, 571 U.S. at 64. The circumstances here do not rise to qualify as one of "the most exceptional cases" in which a valid-forum selection clause should not be given controlling weight. *Id.* at 63. This Court declines to disrupt the parties' "settled expectations" of a forum and will hold the parties to "their bargain." *Id.* at 66.

IV. **CONCLUSION**

Accordingly, for the reasons stated above, **IT IS ORDERED**:

(1) Third-Party Defendants' Joint Motion to Dismiss (Doc. # 23) is **GRANTED**;

(2) Third-Party Plaintiff's Third-Party Complaint (Doc. # 12) is **DISMISSED**;

(3) This matter is **stricken** from the Court's active docket.

This is a **FINAL and APPEALABLE** Order and no just cause for delay exists.

This 25th day of March, 2022.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Cov2020\20-168 MOO re MTD.docx